Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Ross Cornell, Esq. (SBN 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

Attorneys for Plaintiff, JEFFREY SCRUGGS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY SCRUGGS, on behalf of himself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>VIVID SEATS LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1) Cal. Penal Code § 631<br>2) 18 U.S.C. § 2511(1)(a)<br>3) Cal. Bus. & Prof. Code § 17200, *et seq.*<br>4) Cal. Constitution Art. I § 1<br>5) Intrusion Upon Seclusion<br>6) Unjust Enrichment |

1

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff JEFFREY SCRUGGS ("Plaintiff") files this class action complaint on behalf of himself and all others similarly situated (the "Class Members") against Defendant VIVID SEATS LLC, a Delaware limited liability company ("Defendant" or "Vivid Seats LLC"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief as to all others, by and through the investigation of undersigned counsel.

## I.      NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of all California residents who have accessed and used www.vividseats.com (the "Website"), a website that Defendant provides for public access and use.

2.      During his use of the Website, Plaintiff navigated to multiple pages on the Website, unaware that Defendant was causing and permitting Third Parties to intercept the content of his communications and reveal his personal interests.

3.      Defendant caused the interception of the contents of Plaintiff's communications with the Website, including the page URLs identifying what he was browsing and/or the referrer URLs reflecting prior navigation, which were transmitted to the Third Parties during the page-load process itself.

4.      As set forth in the Specific Allegations section of this Complaint below, Defendant surreptitiously embeds and operates third-party tracking technologies on the Website that intercept the contents of users' electronic communications, including the page URLs reflecting what users are browsing, in real time and without notice or consent. Defendant intentionally deploys these technologies to accomplish its commercial objectives, including identity resolution, cross-session behavioral profiling, audience segmentation, and the monetization of users' browsing activity through targeted advertising and real-time bidding.

5.      Defendant deploys these interception technologies in violation of the California Invasion of Privacy Act, Cal. Penal Code § 631, and the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a). Defendant has done so from prior to the beginning of the class

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

period in this case and continuously through to today and ongoingly.

## II.     GENERAL ALLEGATIONS

6.     A pixel tracker, also known as a web beacon, is a tracking mechanism embedded in a website that monitors user interactions. It typically appears as a small, transparent 1x1 image or a lightweight JavaScript snippet that activates when a webpage is loaded, or a user performs a tracked action.

7.     When triggered, the pixel causes the user's browser to transmit data to third-party servers, including the contents of the user's communications with the Website such as page URLs identifying what the user is browsing, referrer URLs reflecting prior navigation and session-level identifiers.

8.     When users visit the Website, Defendant causes tracking technologies to be embedded in visitors' browsers. These include, but are not limited to, the following:

- The Microsoft/Bing Tracker
- The Facebook/Meta Tracker
- The Google Ads Tracker

9.     The third parties who operate the above-listed trackers use the intercepted contents of users' communications collected via the Website for their own independent purposes tied to broader advertising ecosystems, profiling, and data monetization strategies, which go beyond Defendant's direct needs, for their own financial gain. The above-listed trackers are referred to herein collectively as the "Trackers" and their operators below are referred to collectively as the "Third Parties."

10.     The Trackers are operated by distinct third parties, including Microsoft Corporation (as to the Microsoft/Bing UET tracker), Meta Platforms, Inc. (as to the Facebook/Meta tracker), and Google LLC (as to the Google Ads tracker) (collectively, the "Third Parties"). Defendant knowingly embeds and deploys the Trackers on the Website to facilitate the third parties' interception of the contents of users' electronic communications.

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

11. Defendant knowingly embeds and deploys the Trackers on the Website and configures them to execute automatically within users' browsers upon page load and navigation. As a result, Defendant causes the interception and transmission of the contents of users' electronic communications with the Website to servers controlled by the Third Parties. Defendant's conduct is intentional and coordinated, as the Trackers operate pursuant to Defendant's deliberate configuration and are not necessary to render the Website's core content or functionality.

12. The third-party tracking code executed contemporaneously with each page load and navigation event initiated by Plaintiff's browser. As the browser initiated each HTTP request to retrieve Website content, embedded scripts automatically caused the interception and transmission of the contents of users' communications with the Website to remote third-party endpoints during the page-load process itself, before the requested page finished rendering and without any user interaction or authorization.

13. Plaintiff and the Class Members did not consent to the installation, execution, embedding, or injection of the Trackers on their devices and did not consent to the contents of their communications with the Website being intercepted by third parties. The Website did not display any consent banner, pop-up, cookie notice, or other authorization mechanism requesting permission before deploying the Trackers to intercept user communications. Defendant did not obtain express prior consent for the interception and transmission of the contents of users' communications for advertising, analytics, or monetization purposes.

14. Generalized references herein to users, visitors and consumers expressly include Plaintiff and the Class Members.

### III. PARTIES

15. Plaintiff JEFFREY SCRUGGS is a California citizen residing in Solano County, California, and has an intent to remain there. Plaintiff was in California when he visited the Website, which occurred during the class period including but not limited to on February 26, 2026. The allegations set forth herein are based on the Website as

4

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

configured when Plaintiff visited it.

16.    Vivid Seats LLC is a Delaware limited liability company that owns, operates, and controls the Website, an online ticket marketplace through which Vivid Seats LLC lists, sells, and resells tickets to live concerts, theater performances, professional and amateur sports events, comedy shows, and other entertainment events held at venues in California and throughout the United States.

17.    Through the Website and related digital platforms, Vivid Seats LLC conducts its ticket-marketplace business nationwide and serves consumers in California, including in this District, and throughout the United States.

## IV.    JURISDICTION AND VENUE

18.    Vivid Seats LLC is subject to personal jurisdiction in this District under Federal Rule of Civil Procedure 4(k)(1)(A) and California's long-arm statute, Cal. Code Civ. Proc. § 410.10, which authorizes the exercise of jurisdiction on any basis not inconsistent with the United States or California Constitutions.

19.    Vivid Seats LLC has cultivated California as a significant market for its ticket-marketplace business. The Website is a primary digital channel through which Vivid Seats LLC lists, sells, and resells tickets to live events held at California venues, including major sports, concert, and entertainment venues throughout the State, and Vivid Seats LLC actively solicits and serves California consumers in connection with those sales.

20.    In furtherance of those operations, Vivid Seats LLC entered into and maintained commercial partnerships with California-headquartered data and advertising companies, including Meta Platforms, Inc., headquartered in Menlo Park, California, and Google LLC, headquartered in Mountain View, California.

21.    Through those partnerships, Vivid Seats LLC embedded third-party tracking technologies into the Website that transmit California users' communications to data infrastructure and servers operated by California-headquartered companies. Plaintiff, a California resident, accessed the Website from California; the tortious

5

interception of his communications occurred on his device in California; and the intercepted data flowed in part to servers operated by Meta Platforms, Inc. and Google LLC.

22.   Vivid Seats LLC deliberately reached out beyond its home state by knowingly installing the Microsoft/Bing, Facebook/Meta, and Google Ads Trackers onto unsuspecting California users' devices so that it could later use and monetize the data it obtained from those Trackers, in a manner that was neither random, isolated, nor fortuitous.

23.   Vivid Seats LLC's own Privacy Policy confirms the conduct alleged herein. Vivid Seats acknowledges in that policy that it uses cookies, web beacons, and similar tracking technologies to collect information about users' online activities on the Website, including pages users visit and content users view, and that it shares such information with third-party advertising and analytics service providers for purposes including interest-based advertising.

24.   Vivid Seats LLC's purposeful direction of its tracking infrastructure at California, its commercial partnerships with California-headquartered Trackers, and its admissions in its own Privacy Policy collectively establish that Vivid Seats LLC has purposefully availed itself of the privilege of conducting activities in California and has purposefully directed its conduct at California residents.

25.   Plaintiff's claims arise out of and relate to Vivid Seats LLC's forum-related conduct. Plaintiff's communications were intercepted on his device in California, while Plaintiff was located in California, by Trackers Vivid Seats LLC deliberately embedded on its Website. The interception occurred while Plaintiff was browsing California-relevant content on the Website, including ticket listings for live events at California venues, and the intercepted data was routed in part to California-based servers operated by Meta Platforms, Inc. and Google LLC.

26.   Exercising specific personal jurisdiction over Vivid Seats LLC in this District comports with constitutional notions of fair play and substantial justice. Vivid

6

Seats LLC is an established online ticket-marketplace operator with substantial commercial operations directed at California residents, and Vivid Seats LLC cannot reasonably claim surprise or undue burden from being haled into a California federal court to answer claims arising from interception of California residents' communications via Trackers that Vivid Seats itself deliberately installed and configured on the Website.

27.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under federal law, specifically 18 U.S.C. § 2520, which provides a civil cause of action for violations of 18 U.S.C. § 2511(1)(a) of the Federal Wiretap Act.

28.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

29.    This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000, exclusive of interest and costs, there are over 100 members of the proposed Class, and at least one Class Member is a citizen of a State different from Defendant's state of citizenship, satisfying CAFA's minimal-diversity requirement.

30.    Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because (1) Defendant regularly transacts business in this District, operates the Website that serves California residents in this District, and is subject to personal jurisdiction here; (2) a substantial part of the events or omissions giving rise to the claims occurred within this District, including Plaintiff's California-located use of the Website from his Solano County residence; (3) Plaintiff resides in this District; and (4) Defendant derives substantial revenue from California consumers in this District.

/ / /

/ / /

7

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## V.    FEDERAL AND STATE PRIVACY LAWS

### 1.    The California Invasion of Privacy Act (CIPA)

31.    The California Invasion of Privacy Act (CIPA) is a legislative measure designed to safeguard the privacy rights of California residents by prohibiting unauthorized wiretapping and eavesdropping on private communications. The California Legislature recognized the significant threat posed by emerging surveillance technologies, stating that "the development of new devices and techniques for the purpose of eavesdropping upon private communications ... has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society" (Cal. Penal Code § 630).

32.    Despite predating the Internet, CIPA has been applied to email and other Internet communications so long as that application is consistent with the statutory text and purpose. Section 631(a) reaches the interception of email content and online communications and consent under CIPA must be obtained before the interception occurs.

33.    CIPA's text and history confirm that the Legislature intended to protect core privacy rights, as reflected in § 630's declaration that the statute was enacted to protect the right of privacy of the people of this state. CIPA codifies a substantive right to privacy such that the violations of CIPA alleged herein, which implicate traditional interests in personal privacy, constitute concrete injuries sufficient to establish Article III standing.

34.    Individuals may pursue legal action against violators of Cal. Penal Code § 631 and are entitled to seek $5,000 in statutory penalties per violation. Cal. Penal Code § 637.2(a)(1).

### 2.    The Federal Wiretap Act

35.    The Federal Wiretap Act, enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and amended by the Electronic Communications Privacy Act (ECPA) of 1986, prohibits the intentional interception of wire, oral, or electronic

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

communications. Congress enacted the statute to safeguard the privacy of communications against unauthorized interception, recognizing that unchecked surveillance technology poses a fundamental threat to individual liberty.

36.    The Federal Wiretap Act applies to communications transmitted over the Internet. The 1986 ECPA amendments expressly extended the statute's protections to electronic communications as defined under 18 U.S.C. § 2510(12) to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." That includes data transmitted over the internet such as the contents of web browsing activity via HTTP requests as alleged here.

37.    A person whose electronic communications are intercepted in violation of 18 U.S.C. § 2511 may bring a civil action pursuant to 18 U.S.C. § 2520(a). Available relief includes the greater of actual damages or statutory damages of $100 per day for each day of violation or $10,000, whichever is greater, plus punitive damages in appropriate cases, reasonable attorney's fees, and other litigation costs reasonably incurred.

## VI.    SPECIFIC ALLEGATIONS

38.    During his use of the Website, Plaintiff navigated to the following pages, unaware that Defendant was causing and permitting Third Parties to intercept the content of his communications:

- https://www.vividseats.com/nic-pagano-lgbtqia-scholarship-for-recovery-tickets/performer/496939; and
- https://www.vividseats.com/the-lgbt-movement-in-america-tickets--theater-public-speaking/performer/68466.

39.    Plaintiff alleges on information and belief that the tracking mechanisms described below operated on the Website during Plaintiff's visits to the URLs identified above and intercepted the substantive contents of his communications with the Website.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

During each of those page loads, each Tracker received the full page URL identifying the LGBTQ-themed content Plaintiff was viewing, transmitted as a named payload parameter; Facebook/Meta in the dl parameter of its request to www.facebook.com/tr/; and Google Ads in the url parameter of its request to www.google.com/pagead/, www.googleadservices.com/pagead/, and googleads.g.doubleclick.net/pagead/, together with the corresponding page title transmitted as a named payload parameter. Each of those fields communicates the substance, purport, or meaning of what Plaintiff was viewing on the Website, and is therefore content of Plaintiff's electronic communications within the meaning of Cal. Penal Code § 631(a) and 18 U.S.C. § 2510(8). Each Tracker section below illustrates what occurs during live browser access to those pages.

## 1.    *The Microsoft/Bing Tracker*

40.    Defendant embedded and deployed a Microsoft/Bing Universal Event Tracking (UET) tag on the Website, operated by Microsoft Corporation through its advertising platform. The UET tag fires automatically when a user visits the Website, transmitting the full URL of each page a visitor views together with the page title to Microsoft's UET endpoint at bat.bing.com, and simultaneously placing or maintaining persistent third-party tracking cookies (MUID, uetvid) on the visitor's browser, including a MUID cookie set by bat.bing.com with a thirteen-month expiration extending into 2027. Microsoft Corporation and its operators use intercepted browsing data for behavioral profiling, audience segmentation, conversion attribution, and interest-based advertising delivered through the Microsoft Advertising and Bing Search networks.

41.    Figure 1 is a Fiddler Classic raw request capture showing an outbound request transmitted to Microsoft/Bing UET at bat.bing.com during the load of www.vividseats.com/the-lgbt-movement-in-america-tickets--theater-public-speaking/performer/68466, the Website's ticket-listing page for an event identified by its slug as the LGBT Movement in America. The request transmits the full page URL in

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

the p parameter in human-readable form, a persistent Microsoft Visitor ID in the vid parameter, a Microsoft session identifier in the mid parameter, the page title in the tl parameter, and a Referer header identifying www.vividseats.com as the source page.

**<u>Figure 1</u>**



42.    Figure 2 is a WebPageTest waterfall capture showing requests to Microsoft/Bing UET (bat.bing.com) firing automatically during the load of the Website. The capture shows a sequence of Microsoft/Bing UET requests, executing within the page-load window and concurrent with first-party content delivery, without user interaction.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 2**



43.    Figure 3 is a Chrome DevTools Application-panel capture showing the browser's cookie storage during the load of www.vividseats.com/nic-pagano-lgbtqia-scholarship-for-recovery-tickets/performer/496939. The Cookies panel identifies, among others, the persistent MUID Microsoft Master User Identifier cookie stored on the .bing.com domain with an expiration extending into 2027, and the persistent uetvid Microsoft UET Visitor ID cookie stored on the .vividseats.com domain with an expiration extending into 2027.

**Figure 3**



CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

44. Microsoft's servers at bat.bing.com returned responses to each of the Microsoft/Bing UET requests, including HTTP 200 and HTTP 204 status codes, confirming that Microsoft received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website.

45. Microsoft Corporation and its operators used the intercepted content of Plaintiff's communications with the Website concerning sexual orientation and related sensitive content, including the page URLs (in the p parameter), the page titles (in the tl parameter), and page-keyword metadata (in the kw parameter on performer pages), to build behavioral profiles of Plaintiff, conduct cross-session and cross-site identity resolution by reference to the persistent vid, uetvid, and MUID identifiers, segment Plaintiff into audience cohorts, and participate in real-time bidding and ad-personalization auctions in which advertisers pay measurable clearing prices for access to identified Microsoft Advertising audiences. The intercepted contents of Plaintiff's communications have recognized economic value in the digital advertising marketplace.

46. Microsoft Corporation is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant aided and abetted Microsoft Corporation's interception by embedding and configuring the Microsoft/Bing UET tag on the Website. These acts constitute violations of Cal. Penal Code § 631 and 18 U.S.C. § 2511(1)(a).

**2.** *The Facebook/Meta Tracker*

47. Defendant embedded and deployed a Facebook/Meta tracking pixel on the Website, operated by Meta Platforms, Inc. through its advertising and audience-targeting platform. The Facebook/Meta pixel fires automatically when a user visits the Website, transmitting the full URL of each page a visitor views, together with the page title, page description, and page-keyword metadata, to Meta's pixel endpoint at www.facebook.com/tr/, and simultaneously placing or maintaining the persistent _fbp identifier cookie on the visitor's browser at the .vividseats.com first-party domain. Meta

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Platforms, Inc. and its operators use intercepted browsing data for behavioral profiling, audience segmentation, ad personalization, and ad delivery.

48.    On each of the three sensitive URLs identified above, Defendant transmitted to Meta a subset of pixel requests configured as multipart POSTs to www.facebook.com/tr/ that carried the full page URL in the name="dl" form field and the persistent _fbp identifier in the name="fbp" form field, paired in the same outbound request.

49.    Figure 4 is a WebPageTest waterfall capture showing requests to Facebook/Meta (facebook.com and connect.facebook.net) firing automatically during the load of www.vividseats.com/nic-pagano-lgbtqia-scholarship-for-recovery-tickets/performer/496939. The capture shows a sequence of Facebook/Meta requests, including connect.facebook.net/en_US/fbevents.js (Pixel SDK load) and connect.facebook.net/signals/config/ (Pixel configuration fetch), executing within the page-load window and concurrent with first-party content delivery, without user interaction.

**<u>Figure 4</u>**



50.    Figure 5 is a Chrome DevTools Application-panel capture showing the browser's cookie storage during the load of www.vividseats.com/the-lgbt-movement-in-america-tickets--theater-public-speaking/performer/68466. The Cookies panel identifies, among others, the persistent _fbp Facebook/Meta browser identifier cookie stored on the .vividseats.com first-party domain.

14

**Figure 5**



51.    Meta's servers at www.facebook.com returned HTTP 200 OK responses to each of the Facebook/Meta requests, confirming that Meta received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website.

52.    Meta Platforms, Inc. and its operators used the intercepted content of Plaintiff's communications with the Website concerning sexual orientation and related sensitive content, including the page URLs (in the dl parameter or name="dl" form field), the page titles (in the pmd[title] parameter), the human-readable event descriptions (in the pmd[description] parameter), and the page-keyword metadata (in the pmd[keywords] parameter), to build behavioral profiles of Plaintiff, conduct cross-session and cross-site identity resolution by reference to the persistent _fbp identifier, segment Plaintiff into audience cohorts, and participate in real-time bidding auctions in which advertisers pay measurable clearing prices for access to identified Meta audiences. The intercepted contents of Plaintiff's communications have recognized economic value in the digital advertising marketplace.

53.    Meta Platforms, Inc. is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant aided and abetted Meta Platforms, Inc.'s interception by embedding and configuring the Facebook/Meta pixel on the Website. These acts constitute violations of Cal. Penal Code § 631 and 18 U.S.C. § 2511(1)(a).

**3.    *The Google Ads Tracker***

54.    Defendant embedded and deployed a Google Ads conversion-tracking and remarketing mechanism on the Website, operated by Google LLC through its advertising platform. The Google Ads mechanism fires automatically when a user visits the Website, transmitting the full URL of each page a visitor views, together with the page title, across three Google-operated endpoints (www.google.com/pagead/, www.googleadservices.com/pagead/, and googleads.g.doubleclick.net/pagead/), paired with a persistent Google Ads user identifier (auid), and simultaneously placing or maintaining persistent identifier cookies tied to Google (including NID on .google.com and _gcl_au on .vividseats.com). Google LLC and its operators use intercepted browsing data for behavioral profiling, audience segmentation, conversion attribution, and interest-based advertising delivered through the Google Ads and Google-DoubleClick networks.

55.    Figure 6 is a Fiddler Classic raw request capture showing an outbound request transmitted to Google Ads at www.google.com/pagead/ during the load of www.vividseats.com/nic-pagano-lgbtqia-scholarship-for-recovery-tickets/performer/496939, the Website's ticket-listing page for an event identified by its slug as the Nic Pagano LGBTQIA Scholarship for Recovery. The request transmits the full page URL in the url parameter in human-readable form, a persistent Google Ads User ID in the auid parameter, and the page title in the tiba parameter.

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 6**



56.     Figure 7 is a WebPageTest waterfall capture showing requests to Google Ads (google.com, googleadservices.com, and googleads.g.doubleclick.net) firing automatically during the load of www.vividseats.com/the-lgbt-movement-in-america-tickets--theater-public-speaking/performer/68466. The capture shows a sequence of Google Ads requests, including a Google Remarketing beacon, a Google Ads conversion endpoint call, two Google view-through conversion trackers on the doubleclick.net domain, and a Google first-party user-list population call, executing within the page-load window and concurrent with first-party content delivery, without user interaction.

**Figure 7**



17

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

57. Google's servers at www.google.com, www.googleadservices.com, and googleads.g.doubleclick.net returned responses to each of the Google Ads requests, including HTTP 200 OK and HTTP 204 status codes, confirming that Google received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website.

58. Google LLC and its operators used the intercepted content of Plaintiff's communications with the Website concerning sexual orientation and related sensitive content, including the page URLs (in the url parameter) and the page titles (in the tiba parameter), to build behavioral profiles of Plaintiff, conduct cross-session and cross-site identity resolution by reference to the persistent auid, NID, and _gcl_au identifiers, segment Plaintiff into audience cohorts, and participate in real-time bidding auctions in which advertisers pay measurable clearing prices for access to identified Google Ads audiences. The intercepted contents of Plaintiff's communications have recognized economic value in the digital advertising marketplace.

59. Google LLC is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant aided and abetted Google LLC's interception by embedding and configuring the Google Ads conversion-tracking and remarketing mechanism on the Website. These acts constitute violations of Cal. Penal Code § 631 and 18 U.S.C. § 2511(1)(a).

## VII. CLASS ALLEGATIONS

60. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class" or "Class Members") defined as follows:

> All persons within California whose electronic communications with the Website, including the URL contents of their HTTP requests to the Website were intercepted by one or more Trackers between February 26, 2025 and the present.

/ / /

61.    NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members can be ascertained by the records maintained by Defendant.

62.    COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions include but are not limited to:

- Whether Defendant configured the Website to transmit the URL contents of visitors' HTTP requests to the Trackers;
- Whether the URL contents of those requests constitute "contents" of electronic communications within the meaning of Cal. Penal Code § 631(a) and 18 U.S.C. § 2510(8);
- Whether Defendant's conduct constitutes interception of electronic communications in violation of Cal. Penal Code § 631(a);
- Whether Defendant's conduct constitutes intentional interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a);
- Whether Defendant's conduct constitutes an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200;
- Whether Plaintiff and Class Members are entitled to statutory damages;
- Whether Class Members are entitled to injunctive relief;
- Whether the Defendant's conduct violates the California Constitution;
- Whether the Defendant's conduct constitutes an intrusion upon seclusion;
- Whether Class Members are entitled to disgorgement of data unlawfully obtained; and
- Whether Class Members are entitled to restitution.

63.    TYPICALITY: As a person who visited the Website and whose URL contents were intercepted by the Trackers, Plaintiff is asserting claims that are typical of the Class Members. Plaintiff's experience with the Trackers is typical to Class Members.

19

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

64.    ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

65.    SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

## VIII.  FIRST CAUSE OF ACTION

### Violations of Cal. Penal Code § 631

### By Plaintiff and the Class Members Against Defendant

66.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

67.    Plaintiff brings this cause of action on behalf of himself and the Class.

68.    California Penal Code § 631(a) prohibits any person from willfully and without the consent of all parties to the communication reading, or attempting to read, or learning the contents or meaning of any message, report, or communication while the same is in transit, and from using or attempting to use, in any manner or for any purpose, any information so obtained.

69.    The full URLs of Plaintiff's and Class members' HTTP requests to the Website constitute the "contents" of those communications within the meaning of § 631(a). As described in the preceding tracker-specific allegations, the Trackers received human readable copies of URL strings in the same HTTP request or response in which the Website servers received it, while that communication was in transit between Plaintiff's browser and the Website.

/ / /

20

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

70.    Defendant intentionally configured its website to transmit Plaintiff's and Class members' URL contents to the Trackers, itself received and used those URL contents for audience segmentation and ad targeting, and permitted the Trackers to use that information for user profiling and targeted advertising. The Trackers are third parties to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to interception of the contents of their communications by any Tracker, and no other exception to § 631(a) applies.

71.    Each interception constitutes a separate violation of § 631(a). Plaintiff and the Class are entitled to recover the greater of actual damages or $5,000 per violation pursuant to Cal. Penal Code § 637.2(a)(1), injunctive relief, and such other relief as the Court deems just and proper.

## IX.    SECOND CAUSE OF ACTION

### Violations of 18 U.S.C. § 2511(1)(a)

### By Plaintiff and the Class Members Against Defendant

72.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

73.    Plaintiff brings this cause of action on behalf of himself and the Class.

74.    18 U.S.C. § 2511(1)(a) prohibits any person from intentionally intercepting any wire, oral, or electronic communication. The Federal Wiretap Act defines "contents" to include any information concerning the substance, purport, or meaning of a communication. 18 U.S.C. § 2510(8).

75.    The full URLs of Plaintiff's and Class members' HTTP requests to the Website are "contents" of electronic communications within the meaning of 18 U.S.C. § 2510(8). Those URLs communicate the substance and meaning of Plaintiff's and Class members' browsing. As described in the preceding tracker-specific allegations, the Trackers intercepted URL contents in real time, in the same HTTP request or response in which the Website's servers received them, while those communications were in transit.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

76.    Defendant intentionally configured its website to transmit Plaintiff's and Class members' URL contents to each Tracker, itself received and used those URL contents for audience segmentation and ad targeting, and permitted each Tracker to use that information for user profiling and targeted advertising. The Trackers are third parties to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to this interception. The party-exemption under 18 U.S.C. § 2511(2)(d) does not apply, because Defendant, having surreptitiously duplicated and transmitted Plaintiff's electronic communications to undisclosed third-party Trackers as those communications were in transit and without consent, is not a party to the intercepted communications within the meaning of the party-exemption. See In re Facebook, Inc. Internet Tracking Litigation, 956 F.3d 589, 607-09 (9th Cir. 2020) (party-exemption does not extend to a defendant that surreptitiously duplicates the contents of users' electronic communications and transmits them to third parties); 18 U.S.C. § 2510(8) (defining "contents"). No other exception applies.

77.    Plaintiff and the Class are entitled to relief under 18 U.S.C. § 2520, including the greater of actual damages plus any profits made by Defendant through the interception, or statutory damages of $100 per day per violation or $10,000, whichever is greater, together with punitive damages, reasonable attorney's fees, and litigation costs.

## X. THIRD CAUSE OF ACTION

### Violations of Business & Professions Code § 17200

### By Plaintiff and the Class Members Against Defendant

78.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

79.    Plaintiff brings this cause of action on behalf of himself and the Class.

80.    California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practice. Defendant's conduct constitutes both an unlawful and an unfair business practice.

22

81. Defendant's conduct is unlawful. By facilitating the interception of the contents of Plaintiff's and Class members' electronic communications without consent, Defendant violated California Penal Code § 631(a) and 18 U.S.C. § 2511(1)(a). Each statutory violation constitutes a predicate unlawful business act or practice under § 17200.

82. Defendant's conduct is also unfair. Defendant covertly transmitted Plaintiff's and Class members' URL contents to third-party Trackers for commercial monetization without disclosure, authorization, or compensation. The harm to Plaintiff and the Class including but not limited to the interception and commercial exploitation of sensitive personal information and the financial value thereof is substantial, is not outweighed by any legitimate countervailing benefit, and could not reasonably have been avoided by Plaintiff or Class members.

83. Plaintiff and Class members suffered injury in fact and lost money or property as a result of Defendant's conduct. Browsing data identifying the specific content a user views, including browsing URLs of the kind intercepted here, has recognized and quantifiable economic value in the digital advertising marketplace. Each Tracker enabled by Defendant used that intercepted URL content to build behavioral profiles and to participate in real-time bidding auctions in which advertisers pay measurable clearing prices for access to audiences identified by precisely this kind of browsing activity.

84. Plaintiff and Class members provided their browsing data as implicit consideration for access to the Website, a data-for-services exchange that was not disclosed and to which they did not consent. Defendant and the Trackers are designed to and on information and belief did capture the economic benefit of that exchange, in the form of advertising revenue and RTB clearing prices generated by the Trackers' use of users' intercepted URL data, without compensating Plaintiff or Class members. Plaintiff and Class members were thereby deprived of the economic value of their data and of the full value of a privacy-protective browsing experience they reasonably expected and

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

would have bargained for had the exchange been disclosed.

85. Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing its unlawful and unfair practices, restitution of monies acquired by Defendant through those practices, and reasonable attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

## XI.  FOURTH CAUSE OF ACTION

### Violation of the California Constitution, Article I, Section 1

### By Plaintiff and the Class Members Against Defendant

86. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

87. Plaintiff brings this cause of action on behalf of himself and the Class.

88. Article I, Section 1 of the California Constitution provides that privacy is among the inalienable rights of all people in California. To state a claim for violation of the constitutional right to privacy, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

89. Plaintiff and Class Members have a legally protected privacy interest in the contents of their electronic communications with the Website, including the specific page URLs reflecting their browsing activity. California law recognizes a legally protected privacy interest in personal browsing activity, particularly when that activity is covertly intercepted by commercial third parties for advertising and profiling purposes without disclosure or consent.

90. Plaintiff and Class Members had a reasonable expectation of privacy in the contents of their electronic communications with the Website. A reasonable person visiting an event and ticketing website does not expect that the specific pages they browse will be covertly transmitted to multiple separate third-party commercial tracking companies in real time, linked to persistent cross-session user profiles, and used for advertising targeting, behavioral analytics, and commercial monetization.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

91.    Defendant's conduct constitutes a serious invasion of that privacy. By deliberately embedding and configuring three third-party tracking technologies on the Website, Defendant caused the real-time, covert interception of the URL contents of Plaintiff's and Class Members' electronic communications and their transmission to third parties where they were linked to persistent cross-session profiles and used for commercial advertising and analytics purposes without Plaintiff's knowledge or consent. The severity of the invasion is heightened by the nature of the website, the sensitivity of the content browsed, the persistent and cross-platform nature of the identifiers used, and the commercial exploitation of the intercepted data.

92.    As a result of Defendant's invasion of their privacy, Plaintiff and Class Members have suffered harm, including loss of privacy, loss of control over their personal information, and the unauthorized commercial exploitation of their browsing activity. Plaintiff and the Class seek injunctive relief, nominal damages, and all other relief authorized by law.

## XII.   FIFTH CAUSE OF ACTION

### Intrusion Upon Seclusion

### By Plaintiff and the Class Members Against Defendant

93.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

94.    Plaintiff brings this cause of action on behalf of himself and the Class.

95.    The common law tort of intrusion upon seclusion requires: (1) an intentional intrusion, physically or otherwise, into a place, conversation, or matter in which the plaintiff has a reasonable expectation of privacy; and (2) that the intrusion would be highly offensive to a reasonable person.

96.    Defendant intentionally intruded into Plaintiff's and Class Members' electronic communications with the Website by deliberately embedding third-party tracking technologies that intercepted the URL contents of those communications in real time and transmitted them to third parties without Plaintiff's knowledge or consent.

25

Plaintiff had a reasonable expectation of privacy in the contents of those communications.

97. The intrusion is highly offensive to a reasonable person. Defendant covertly deployed tracking technologies that captured the specific content Plaintiff was browsing and transmitted it to multiple third-party commercial entities for advertising targeting and behavioral profiling. The covert and non-consensual nature of the interception, the nature of the Website and the sensitivity of the content browsed, the commercial exploitation of the intercepted browsing activity for advertising and data analytics purposes, and the use of persistent cross-session identifiers to build comprehensive user profiles without disclosure all render the intrusion highly offensive to a reasonable person.

98. As a result of Defendant's intrusion upon their seclusion, Plaintiff and Class Members have suffered harm, including loss of privacy, emotional distress, and the unauthorized exploitation of their personal information. Plaintiff and the Class seek compensatory damages, nominal damages, injunctive relief, and all other appropriate relief.

## XIII.  SIXTH CAUSE OF ACTION

### Unjust Enrichment

### By Plaintiff and the Class Members Against Defendant

99. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

100. Plaintiff brings this cause of action on behalf of himself and the Class.

101. Unjust enrichment requires: (1) a benefit conferred on the defendant; (2) at the expense of the plaintiff; and (3) circumstances that make it inequitable for the defendant to retain the benefit without compensating the plaintiff.

102. Defendant received a benefit by permitting third parties to deploy their tracking technologies on the Website. In exchange for allowing these third parties to intercept and collect the URL contents of visitors' communications with the Website,

26

Defendant received monetary compensation, data licensing benefits, promotional support, or other commercial value. Defendant's arrangement with these tracking operators enabled it to offer analytics, retargeting, and advertising services that generated commercial revenue and business value.

103.    Defendant received this benefit at Plaintiff's and Class Members' expense. Plaintiff's and Class Members' browsing data constitutes personal property with recognized economic value in the digital advertising marketplace. By intercepting the URL contents of Plaintiff's communications and transmitting them to third-party trackers, Defendant and its tracking partners extracted the commercial value of that data without compensation. Plaintiff and Class Members also suffered the loss of control over their personal information, which has recognized economic value as a privacy-protective property interest.

104.    It is inequitable for Defendant to retain the benefits of its data-for-services arrangement without compensating Plaintiff and Class Members whose browsing activity was the source of that commercial value. Defendant's concealment of the tracking arrangement and its failure to obtain Plaintiff's and Class Members' informed consent render retention of those benefits unjust.

105.    Plaintiff and the Class seek restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense.

## XIV.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following:

1. An order certifying the Class, naming Plaintiff as Class representative, and naming Plaintiff's attorneys as Class counsel;

2. An order declaring that Defendant's conduct violates Cal. Penal Code § 631(a), 18 U.S.C. § 2511(1)(a), Cal. Bus. & Prof. Code § 17200, et seq., Article I, Section 1 of the California Constitution, and the common law prohibition against intrusion upon seclusion;

3. An order enjoining Defendant from continuing the conduct alleged

27

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

herein;

4. Statutory damages pursuant to Cal. Penal Code § 637.2(a)(1) of $5,000 per violation;

5. Statutory damages pursuant to 18 U.S.C. § 2520 of the greater of actual damages plus any profits made by Defendant through the violation, or $100 per day per violation or $10,000, whichever is greater;

6. Punitive damages pursuant to 18 U.S.C. § 2520;

7. Restitution pursuant to Cal. Bus. & Prof. Code § 17200, et seq.;

8. Nominal damages and injunctive relief for violation of Article I, Section 1 of the California Constitution;

9. Compensatory and nominal damages for intrusion upon seclusion;

10. Restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense;

11. Prejudgment interest;

12. Reasonable attorney's fees and costs; and

13. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted,

Dated:   June 2, 2026        **NATHAN & ASSOCIATES, APC**

By: */s/ Reuben D. Nathan*
Reuben D. Nathan
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**LAW OFFICES OF ROSS CORNELL, APC**
Ross Cornell, Esq. (SBN 210413)
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

*Attorneys for Plaintiff and the Putative Class*

29

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED